**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HOLTEC INTERNATIONAL and HOLTEC )
MANUFACTURING DIVISION, INC., )
             )  Civil Action No. 17-397
    Plaintiffs,   )  Magistrate Judge Maureen P. Kelly
             )
     v.     )  Re: ECF No. 136
             )
ARC MACHINES, INC., and JOHN DOES 1- )
10,             )
             )
    Defendants.   )

## OPINION AND ORDER

   Plaintiffs Holtec International and Holtec Manufacturing Division, Inc. (collectively, "Holtec") bring this action against ARC Machines, Inc. ("AMI"), alleging claims for breach of contract, promissory estoppel, unjust enrichment, breach of warranty and negligence.  Holtec's claims arise out of AMI's sale, installation, and failure to repair two defective made-to-order welding power supply systems.

   Presently before the Court is AMI's renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 136.  For the reasons that follow, the motion for summary judgment is denied and the motion to dismiss is granted in part and denied in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

   The following facts derive from the pleadings to date and, at this stage of the litigation, are construed in a light most favorable to Holtec.

   Holtec is a global supplier of equipment for the energy industry with a manufacturing facility in Pennsylvania. In 2012, Holtec contracted with officials at the Chernobyl nuclear facility to manufacture and supply double-walled canisters for nuclear fuel storage.  Holtec's contract

specified welding processes that required the purchase of a new welding system.  Holtec contracted with Pandjiris, Inc. for the system at a cost of $709,260.  At Holtec's request, Pandjiris incorporated two AMI Hot Wire TIG Welding Packages supplied at a cost of $407,610 and agreed to supply mounting and integration of the AMI power supply systems.  ECF No. 95 ¶¶ 10, 17.

The Pandjiris and AMI equipment was installed in January 2013.  Almost immediately, the AMI power systems experienced electrical faults that caused Holtec to suffer prolonged manufacturing delays.  By 2015, Holtec completed welding for only 20 of the 330 canisters it had contracted to supply for the Chernobyl nuclear facility.  Throughout this period, AMI attempted repairs to its equipment.  After each repair, AMI assured Holtec that all faults were cured.  Holtec alleges that with each repair, AMI issued a new warranty, as reflected in invoices that include as a "comment" the term "**WARRANTY**".  Id. ¶¶ 24-29, 34 -36.

Pandjiris agreed that AMI's equipment failed to perform but refused to refund the purchase price for AMI's welding products.  In July 2015, AMI personnel conceded that it could not identify or fix any defects.  In September 2015, AMI informed Holtec that the equipment was no longer under warranty and Holtec would have to pay for any additional repairs.  Id. ¶¶ 40, 42.

By January 2016, Holtec demanded a refund for the AMI equipment and replaced the AMI components with equipment from a different manufacturer at cost of $ $785,317.  Within 11 days, the new equipment was installed and Holtec commenced welding operations without incident or further delay.  Id. ¶¶ 43, 49.

In January 2017, Holtec initiated this action in the United States District Court for the District of New Jersey against Pandjiris and AMI.  The district court transferred this case to the United States District Court for the Western District of Pennsylvania.  ECF No. 22.  Holtec filed an Amended Complaint alleging breach of contract and warranty claims against Pandjiris and

alleging these same claims against AMI as a third-party beneficiary to the Pandjiris-AMI contract. ECF No. 51.  Pandjiris responded with a Motion to Dismiss or in the Alternative Motion to Stay based on the terms of arbitration agreement between Holtec and Pandjiris.  ECF No. 52.  AMI moved to dismiss the Amended Complaint for failure to plead facts sufficient to state a claim.  ECF No. 55.  On November 3, 2017, the Court granted Pandjiris' Motion to Dismiss and/or Stay and referred all claims between Holtec and Pandjiris to arbitration.  AMI's Motion to Dismiss was denied without prejudice to be refiled once the stay was lifted.  ECF No. 58.

On July 26, 2019, Holtec moved to lift the stay because arbitration proceedings against Pandjiris were complete.  ECF No. 70. AMI opposed the motion on collateral estoppel grounds, arguing that the arbitration award in Pandjiris's favor resolved all claims against AMI.  ECF Nos. 72 and 81.  The arbitrators concluded that "Holtec failed to meet its burden of proving that the problems Holtec encountered with the operation of the AMI welding equipment were attributable to a defect in materials or workmanship in the equipment manufactured by Pandjiris or in any materials or components of the equipment described in the Quotation that were manufactured by others.  We do not find that Holtec proved its right to damages on any theory of liability."  ECF No. 74-1.

Holtec argues that the arbitration and ruling are not as broad as AMI represents.  Holtec states it was precluded from engaging in AMI-related discovery or presenting evidence regarding AMI's conduct because AMI was not a party to the arbitration proceeding.  ECF Nos. 75 and 78.

The Court granted Holtec's Motion to Lift the Stay, ECF No. 82, and with leave of Court, Holtec filed its Second Amended Complaint against AMI and John Does 1-10.  Holtec identifies the John Doe defendants as unknown AMI agents, servants, or employees.  ECF Nos. 94, 95.

AMI responded to the Second Amended Complaint with the pending Motion to Dismiss. AMI contends that Holtec again fails to plead any of the requisite elements of its claims and that newly alleged negligence claims are barred by the economic loss doctrine and the applicable statute of limitations. Alternatively, AMI contends that it is entitled to summary judgment in its favor as to all claims asserted against it because collateral estoppel bars relitigation of issues decided at arbitration.

The Court ordered the parties to file supplemental briefs addressing potential conflicts of law as to Holtec's various state law claims. The parties requested and were granted a brief stay of proceedings to pursue ultimately unsuccessful alternative dispute resolution proceedings. The parties then filed conflict of law analyses, and Holtec sought leave to file a third amended complaint to add professional negligence claims against individual AMI employees. The Court denied leave to amend, finding the proposed amendments futile as barred by applicable Pennsylvania law. AMI renewed its Motion to Dismiss or, in the Alternative, Summary Judgment, and Holtec renewed its previously filed responses at ECF Nos. 106, 107, 108, 112, 113, 118, and 139. AMI's motion is now ripe for consideration.

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss

Federal courts must dismiss cases that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Complaints therefore must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). When determining whether dismissal is appropriate, the Court must: "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components

of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). The Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Blanyar v. Genova Prods. Inc., 861 F.3d 426, 431 (3d Cir. 2017) (citation omitted). The Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd., 836 F.3d 261, 268 (3d Cir. 2016) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

### B. Motion for Summary Judgment

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Rule 56, the Court should enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A motion for summary judgment will be denied only when there is a genuine issue of material fact, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts cannot defeat a motion for summary judgment. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence is such that a reasonable jury could return a verdict for the non-

moving party.  McGreevy, 413 F.3d at 363; Simpson v. Kay Jewelers, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).  As to materiality, the relevant substantive law identifies which facts are material.  Anderson, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  "Factual disputes that are irrelevant or unnecessary will not be counted."  Id.  Further, inferences based on speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III.   DISCUSSION

### A.   Choice of Law

In resolving the substantive issues presented by AMI's Motion to Dismiss, the Court must determine which jurisdiction's law applies to this dispute.  Pandjiris is a Missouri corporation, AMI is a California corporation, Holtec International is a New Jersey corporation, and Holtec Manufacturing Division, Inc. is a Pennsylvania corporation.

A federal court exercising diversity jurisdiction must apply the choice of law rules employed by the state in which it sits; in this case Pennsylvania.  See, Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am., 693 F.3d 417, 432 (3d Cir. 2012) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Pennsylvania choice of law rules direct that the court must first determine whether a "true conflict" exists between the relevant laws of Pennsylvania and the other states with an arguable interest in the litigation.  Hanreck v. Winnebago Indus., Inc., No. 16-1163, 2019 WL 1383509, at *3 (M.D. Pa. Mar. 27, 2019). If the jurisdictions'

6

laws are the same, there is no conflict, and the court's choice of law inquiry ends. <u>Hammersmith v. TIG Ins. Co.</u>, 480 F.3d 220, 230 (3d Cir. 2007). If relevant differences exist, the court must then determine whether the conflict is a "true" conflict. <u>Id.</u> A "true" conflict exists only if the involved "jurisdictions' interests would be impaired by the application of the other's laws." <u>Id.</u> If a true conflict exists, the court must "determine[] which state has the greater interest in the application of its law" by using "a combination of the approaches of both [the] Restatement II [of Conflict of Laws] (contacts establishing significant relationships) and interests analysis (qualitative appraisal of the relevant States' policies with respect to the controversy)." <u>Id.</u> at 231 (internal quotations omitted).

Pennsylvania choice of law principles also recognize that "different state laws may apply to different issues within a case." <u>Hanreck</u>, 2019 WL 1383509, at *3 (citing <u>Berg Chilling Sys., Inc. v. Hull Corp.</u>, 435 F.3d 455, 462 (3d Cir. 2006)); <u>Georgine v. Amchem Prods., Inc.</u>, 83 F.3d 610, 627 (3d Cir. 1996) (the court "must apply an individualized choice of law analysis to each [of] plaintiff's claims").

In this case, Holtec brings breach of contract, breach of warranty and equitable claims for relief against AMI as a third-party beneficiary to Pandjiris's purchase agreement with AMI. Holtec also asserts equitable, negligence and breach of warranty claims directly against AMI based on representations regarding repairs provided by AMI to Holtec.  Thus, the Court will conduct a choice of law analysis for each claim or defense raised by the parties.

### B.    Collateral Estoppel

AMI contends that the arbitration award entered in favor of Pandjiris precludes Holtec's recovery under any theory of liability set forth in its Second Amended Complaint.  ECF No. 102 at 18-21.  AMI points to the arbitrators' finding that Holtec failed to meet its burden to prove that

the problems encountered with the operation of Pandjiris's equipment were attributable to any components that others manufactured.  ECF No. 103-4.  Given the breadth of AMI's argument as applied to all pending claims, the Court must first determine whether collateral estoppel bars this litigation.

Under the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 95, whether arbitration bars nonlitigated claims is determined by the law of the state where the arbitration award was entered.  See Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177, 1184 (3d Cir. 1972) (where the arbitration award and the judgment entered  were rendered in New York, "the general New York law of res judicata and collateral estoppel is applicable to determine what effect the arbitration award should be given by the district court"). AMI suggests that the arbitration between Holtec and Pandjiris occurred in Ohio and so Ohio law may apply; alternatively, AMI argues Pennsylvania law applies.[1] ECF No. 138 at 14.  Holtec does not address the issue.  Regardless of the physical location of the arbitration, a judgment rendered relative to Holtec's claims against Pandjiris would be entered in Pennsylvania, in this litigation.   Thus, the Court will apply Pennsylvania law to determine whether the Pandjiris arbitration decision bars Holtec's claims against AMI.

Under Pennsylvania law, collateral estoppel bars a party from litigating an issue if these four elements are satisfied: (1) the issue decided in a prior action is identical to the one presented in the later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action or was in privity to the prior action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.  Rue v. K–Mart Corp., 713 A.2d 82, 84 (Pa.

---

[1] Holtec and Pandjiris agreed to Ohio as the arbitration forum.  ECF No. 68 at 2.

1998).  As the party seeking to effect an estoppel, AMI "has the burden of demonstrating the propriety of its application." Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000).

AMI's burden begins with demonstrating the identity of issues in the arbitration.  Whether the same issues are involved is established "by showing that the same general rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." McKenna v. Metro. Life Ins. Co., 126 F. App'x 571, 576 (3d Cir. 2005) (quoting Suppan, 203 F.3d at 233). AMI contends that the issues are identical, despite Holtec's assertion of direct equitable, contract, breach of warranty and negligence claims against AMI for AMI's alleged repeated failure to repair the equipment.  On this basis alone, estoppel is inappropriate given that the arbitrators' ruling is limited to Holtec's claims against Pandjiris for its supply of allegedly defective equipment.  See Raytech Corp. v. White, 54 F.3d 187, 193 (3d Cir. 1995)  ("even if all four requirements of collateral estoppel are met, changes in "controlling" facts, that is, facts "essential to a judgment" will render collateral estoppel inapplicable in a subsequent action raising the same issues").

AMI's burden to establish that collateral estoppel bars this action becomes insurmountable for the fourth factor –  whether Holtec was provided a full and fair opportunity to litigate the issues at bar.  AMI does not challenge Holtec's contention that the arbitrators precluded discovery directed at AMI employees and excluded testimony from AMI employees regarding repeated failed attempts to repair the power supply equipment.  If true, it cannot be said that Holtec had a full and fair opportunity to litigate its claims.

AMI cites Witkowski v. Welch, 173 F.3d 192 (3d Cir. 1999) to support the application of estoppel even when a plaintiff contests the scope of prior arbitration.  ECF No. 104 at 20.  In Witkowski, however, the court was presented with a full transcript of arbitration proceedings to permit it to assess the issues litigated and the evidentiary rulings that allegedly impeded

presentation of plaintiff's claims.  Id. at 203-04.   Here, the Court lacks the arbitration record and is unable to determine whether Holtec was precluded from a full and fair opportunity to litigate its third-party and direct claims against AMI.  Under these circumstances, AMI has not met its burden to establish as a matter of law that collateral estoppel applies to foreclose litigation of Holtec's claims.  Accordingly, AMI's Motion for Summary Judgment raising collateral estoppel as a complete defense is denied.

### C.    Third-Party Beneficiary

Turning to AMI's Motion to Dismiss, AMI contends that regardless of the theory advanced, Holtec has failed to allege plausible breach of contract, promissory estoppel, unjust enrichment, or breach of warranty claims and so dismissal is appropriate as a matter of law. ECF No. 104.  These claims depend in part upon Holtec's alleged status as a third-party beneficiary to the Pandjiris-AMI power supply equipment contract.

Holtec alleges that despite Pandjiris's contract with AMI for the subject components, the inclusion of AMI's equipment in the purchase order occurred only after Holtec traveled to AMI's production facilities for an in-person demonstration.  Based on AMI's demonstration of the equipment, Holtec requested that Pandjiris include the AMI welding package in its offer.  ECF No. 95 ¶ 21. AMI retained responsibility for installing the equipment at Holtec's facility and for training Holtec personnel in its use.  Id. ¶¶ 22-23.  As equipment malfunction issues arose, AMI communicated directly with Holtec, issued warranty statements, and billed Holtec directly for parts or repairs.  Id. ¶¶ 34, 35-37, 45.   Based on these allegations, among others, Holtec contends that it was a third-party beneficiary to the AMI-Pandjiris contract and therefore may assert direct claims against AMI for "breach of contract and/or warranty, express and/or implied at law."  Id. ¶¶ 55, 56.

AMI seeks dismissal of third-party beneficiary claims because Holtec does not allege facts establishing that AMI and Pandjiris intended that Holtec would be a beneficiary of the contract. ECF No. 104 at 9-11.  AMI alternatively argues that Holtec's claims and requested relief are precluded by the terms of the contract.  Id. at 11.

As to any conflict in state law impacting Holtec's claim, AMI suggests that without a choice of law provision in the contract, resolution of third-party beneficiary status is governed by California or Pennsylvania law and that the result under both is the same.  ECF No. 138 at 6. Holtec agrees that the result is the same under Pennsylvania and California law, and posits that New Jersey law, if applicable, "is essentially the same and there is no conflict of law." ECF No. 139 at 4-5.  Given the parties' agreement, the Court will not undertake a detailed conflict of law analysis and will accept the unchallenged proposition that the result would not differ in any material respect.  As gleaned from a brief survey, all three jurisdictions examine the circumstances of the contract to determine whether it is reasonable to permit the plaintiff to assert claims as a third-party beneficiary.[2]  The Court therefore looks to Pennsylvania law as the forum jurisdiction.

In this regard, AMI does not address the Pennsylvania Supreme Court's rejection of a formulaic limit to the scope of third-party beneficiary status.  See generally, Scarpitti v. Weborg,

---

[2] See, e.g., Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc., 651 F. Supp. 2d 349, 352–53 (E.D. Pa. 2009) (quoting Scarpitti v. Weborg, 609 A.2d 147 (Pa. 1992)("[A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, [] unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and [either] the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."); IMS Health Info. Sols. USA v. Lempernesse, No. CV 15-7561, 2016 WL 236214, at *7 (D.N.J. Jan. 19, 2016) ("the RESTATEMENT (SECOND) OF CONTRACTS § 302, which has been cited approvingly by the New Jersey Supreme Court, [] provides that a non-signatory is an intended beneficiary where, inter alia, 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promise performed'"); Goonewardene v. ADP, LLC, 434 P.3d 124, 132–33 (Cal. 2019) (a court should "examine[] the express provisions of the contract at issue, as well as all of the relevant circumstances under which  the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to permit the third party action to go forward.").

609 A.2d 147.  Pennsylvania's highest court has confirmed that third-party beneficiary status is determined from a record that establishes whether the point of the contract at issue was to benefit the plaintiff:

> In Scarpitti, the developer hired an architect to enforce the architectural standards contained in the development's recorded subdivision deed restrictions. 609 A.2d at 148. This Court held owners of property in the development—not parties to the contract between architect and developer—could nevertheless bring a claim against the architect for failure to enforce the deed restrictions uniformly. The Court concluded the property owners were intended third-party beneficiaries of the contract between the developer and the architect because the very purpose of that agreement was to ensure compliance with certain standards within their own development, and thus the owners clearly were intended to benefit from the establishment of a vehicle to enforce those standards. 609 A.2d at 151. The Court held the claimant-owners reasonably relied "upon the promise [between developer and architect] as manifesting an intention to confer a right on them."  Id.

Estate of Agnew v. Ross, 152 A.3d 247, 263 (Pa. 2017).  In Delaware & Hudson Ry. Company, Inc. v. Knoedler Manufacturers, Inc., No. 11-314, 2018 WL 5312758, at *3 (W.D. Pa. Oct. 26, 2018), this Court similarly held that when the defendant supplied made-to-order components for a product bought by the plaintiff from the prime contractor, "[i]t strains credulity to suggest that given the facts surrounding this contract, [the plaintiff] was not an intended third-party beneficiary."

Holtec's Second Amended Complaint likewise alleges a plausible claim that the Pandjiris-AMI contract was intended to benefit Holtec.  The purchase documents of record include a provision for AMI made-to-order power supply and welding equipment for Holtec's facility, and therefore appear designed to meet Holtec's specific needs at its request.  ECF No. 91-481; ECF No. 95 ¶¶ 18 - 21.  Accordingly, Holtec has alleged a plausible claim that it was an intended third-party beneficiary and the Motion to Dismiss on this basis is denied.

AMI alternatively argues that it is entitled to dismissal because the Pandjiris-AMI contract does not permit recovery of damages outside AMI's limited warranty and then only if requested

within two years of delivery.  ECF No. 104 at 11-12. The record contains a "revised quote" from AMI to Pandjiris.  ECF No. 113 at 451-461 (Exhibit KK).  That said, it is not clear that this is the relevant contract, or whether any limitations set forth therein are nullified by Pennsylvania's repair doctrine.  Under the repair doctrine, the period within which a breach of contract or breach of warranty claim must be asserted is tolled when (1) repairs have been attempted; (2) a representation has been made that the repairs would cure the defect; and (3) a party has relied upon that representation.  Delaware & Hudson Ry., 2018 WL 5312758, at *4 (citing Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc. L.P., 842 A.2d 334, 349 n. 8 (Pa. 2004) and Amodeo v. Ryan Homes, Inc., 595 A.2d 1232, 1238 (Pa. Super. 1991)).   At this stage of the litigation, without discovery related to the contract between Pandjiris and AMI or the circumstances surrounding AMI's delivery and attempted repairs to the subject equipment, the Court finds that Holtec has pleaded a plausible third-party beneficiary claim under the Pandjiris-AMI contract.  Therefore, the Motion to Dismiss Count II of the Second Amended Complaint is denied.

    **D.  Unjust Enrichment and Promissory Estoppel**

    As alternatives to direct or third-party breach of contract claims, Holtec alleges equitable claims for unjust enrichment and promissory estoppel.  ECF No. 95 at 15 (Count I). AMI seeks dismissal of these claims because Holtec failed to plead facts (1) establishing that Holtec conferred a benefit on AMI that was unjustly retained or (2) that Holtec relied on any promise made to it by AMI.  ECF No. 104 at 8-9.  Holtec responds that it has pleaded a plausible unjust enrichment claim based on the payment of at least $140,000 for faulty equipment and unsuccessful repairs.  ECF No. 106 at 5-6. Likewise, Holtec contends it has alleged reliance on AMI's "ongoing promises" that it cured all defects with each visit to Holtec's facility.  Id.

Unjust enrichment and promissory estoppel are state law equitable claims.  To determine which state's law applies, the parties have identified the elements of both claims under Pennsylvania, California, and New Jersey law and conclude that there is no conflict.  ECF No. 138 at 9; ECF No. 139 at 2-3.  The Court will again refer to Pennsylvania law based on the parties' representations.  Harris v. Kellogg, Brown & Root Servs., Inc., 796 F. Supp. 2d 642, 656 (W.D. Pa. 2011) ("[i]f [the] respective laws are the same, there is no conflict at all and the choice of law analysis ends; the law of the forum, Pennsylvania law here, would apply").

Under Pennsylvania law, a claim of unjust enrichment must allege: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit.  Com. ex rel. Pappert v. TAP Pharm. Prods., Inc., 885 A.2d 1127, 1137 (Pa. Commw. 2005). See also, Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." (internal quotation omitted)).

 "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." Limbach v. City of Phila., 905 A.2d 567, 577 (Pa. Commw. 2006). A third-party to a contract, like Holtec, may bring an unjust enrichment claim when the defendant has "received and retained a benefit" from the plaintiff "which would be unjust to retain" without some payment to the plaintiff.  Bigler Boyz Enviro, Inc. v. Clean Fuels of Indiana, Inc., No. 3:19-170, 2020 WL 1929424, at *4 (W.D. Pa. Apr. 21, 2020), quoting Meyer, Darragh, Buckler, Bebenek & Eck P.L.L.C. v. Law Firm of Malone Middleman, P.C., 179 A.3d

1093, 1103 (Pa. 2018).  Whether an enrichment is unjust is factual question to be determined case-by-case.  Id.

Here, Holtec has sufficiently pleaded facts to plausibly establish that AMI has been unjustly enriched.  Through Holtec's contract with Pandjiris and at Holtec's direction, AMI received substantial payments to supply made to order equipment that was represented by AMI to Holtec to perform satisfactorily.  Separately, AMI received direct payments from Holtec to repeatedly repair the equipment.  ECF No. 95 ¶¶ 18, 21.  Holtec alleges after each attempted repair, AMI represented that the equipment was properly functioning; yet Holtec continued to suffer delays from ongoing equipment failure.  Id. ¶¶ 18-48.  AMI's alleged misrepresentations of the success of each repair induced Holtec to continue to work with AMI to its detriment despite additional delays that impeded progress of its contracted Chernobyl work.  Id. These facts, if true, could permit a jury to conclude that AMI's receipt of payments for the equipment and subsequent repairs is unjust.

AMI also argues that Holtec has not alleged facts sufficient to set forth a claim for promissory estoppel.  To establish a claim for promissory estoppel, Holtec must prove (1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (3) which does induce such action or forbearance is binding, and (4) injustice can be avoided only by the enforcement of the promise.  See Weavertown Transp. Leasing, Inc. v. Moran, 834 A.2d 1169, 1174 (Pa. Super. 2003). The promisor must make a promise that he reasonably expects to induce reliance and that is not broad or vague.  CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 634 (3d Cir. 2013); Burton Imagine Group v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 438-39 (E.D. Pa. 2007); accord Fried v. Fisher, 328 Pa. 497, 503, 196 A. 39, 43 (1938).

To establish a promissory estoppel claim, there must exist "an express promise between the promisor and the promisee" — "a 'broad or vague implied promise' will be deemed insufficient." <u>MRO Corp. v. Humana Inc.</u>, 383 F. Supp. 3d 417, 423 (E.D. Pa. 2019); <u>see</u> <u>C & K Petroleum Prods., Inc. v. Equibank</u>, 839 F.2d 188, 192 (3d Cir. 1988) ("Promissory estoppel would be rendered meaningless if ... detrimental reliance [was] based on the alleged existence of [ ] a broad and vague implied promise.") (citation omitted). Rather, the promise must indicate the intent of the parties with "reasonable certainty." <u>MRO Corp.</u>, 383 F. Supp. 3d at 423.

In the Second Amended Complaint, Holtec alleges that AMI repeatedly made representations about the adequacy of repairs that Holtec relied on to its detriment when it continued to pay for repair services and parts and otherwise delayed replacement of the equipment. <u>See</u> ECF 95 ¶ 34 ("For the next two (2) years, AMI continually attempted repairs and assured Plaintiff the problems with the machines were fixed."); <u>id.</u> ¶ 36 ("[o]n or about May 2013, AMI e-mailed Holtec stating that the equipment was fixed and operating as required."). Under the totality of the circumstances alleged, a factfinder could conclude that AMI's representations related to its repairs to the equipment constituted promises that the equipment would function as intended with minor adjustments and changing discrete parts. In addition, a factfinder could determine that these promises induced Holtec to refrain from replacing the equipment to its long-term manufacturing and financial detriment. At this early stage of the litigation, the Court finds that Holtec has adequately alleged a claim for promissory estoppel. <u>Lutz v. Rakuten, Inc.</u>, 376 F. Supp. 3d 455, 476 (E.D. Pa. 2019).

### E. Breach of Warranty

At Count III, Holtec alleges that AMI breached express and implied warranties and delivered nonconforming goods. ECF No. 95 ¶¶ 58-59. AMI seeks dismissal because Holtec fails

to identify the specific provision of the Uniform Commercial Code under which Holtec brings its claims, fails to allege that it provided notice of nonconforming goods, fails to identify the breached terms of any specific warranty, and fails to plead facts establishing the elements of an implied warranty claim.   ECF No. 104 at 12-14.

The parties agree that Pennsylvania law applies to each of Holtec's warranty claims.  ECF No. 138 at 7-9; ECF No. 139 at 6-7.  As a result, the Court understands Holtec's claims for breach of express warranty and the implied warranty of merchantability rely on 15 Pa. C.S.A. §§ 2313 (express warranties), and 2314 (implied warranty of merchantability).[3]

AMI correctly contends that under Pennsylvania law, a plaintiff must provide defendant notice of a defect or nonconformity before initiating litigation for breach of warranty.   ECF No. 104 at 12-13; and see Vanalt Elec. Const. Inc. v. Selco Mfg. Corp., 233 F. App'x 105, 111 (3d Cir. 2007) ("the Pennsylvania Supreme Court would agree that a buyer must prove compliance with [15 Pa. C.S.A. § 2607] before recovering for a breach of contract or warranty involving nonconforming goods").  That said, the notice required is general notification of a nonconformity or a defect "to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit." Incubadora Mexicana, SA de CV v. Zoetis, Inc., 310 F.R.D. 166, 174 (E.D. Pa. 2015) quoting Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) (citation omitted).  Holtec's Second Amended Complaint lists several occasions before the start of litigation when Holtec communicated with AMI personnel that it was dissatisfied with AMI's equipment and AMI repeatedly failed to complete successful repairs.  ECF No. 95 ¶¶ 25, 34-40.  If the evidence supports Holtec's claims, each complaint gave rise to an opportunity for

---

[3] AMI does not point to any statutory provision or binding precedent requiring a plaintiff to identify the specific Pennsylvania Commercial Code provision supporting a breach of warranty claim and the Court declines the invitation to impose such a requirement here.  ECF No. 104 at 12.

AMI to resolve the dispute and repair its equipment.  AMI's Motion to Dismiss challenging the sufficiency of notice of defects therefore is denied.

AMI next seeks dismissal because Holtec fails to plead the terms of any express warranty. Yet, in its brief, AMI sets forth the exact terms of the limited warranty issued with the sale of its equipment.  ECF No. 104 at 11.  Given AMI's exposition of the terms of its own limited warranty, AMI cannot reasonably assert lack of notice as to the nature of Holtec's breach of warranty claim. Therefore, the Motion to Dismiss the breach of express warranty claim based on the sufficiency of the pleadings is denied.  It is expected, however, that upon completion of discovery, Holtec will disclose all facts regarding its express warranty claim so that any remaining express warranty issues may be addressed at the summary judgment stage.  Hurley v. BMW of N. Am., LLC, No. CV 18-5320, 2020 WL 1624861, at *6 (E.D. Pa. Apr. 2, 2020).

AMI also challenges the sufficiency of facts supporting Holtec's breach of implied warranty claim.  ECF No. 104 at 13-14. Under Pennsylvania law governing implied warranty of merchantability, every seller warrants that the goods are "fit for the ordinary purposes for which such goods are used." 13 Pa. C.S. § 2314(b)(3). To establish a breach of an implied warranty of merchantability, Holtec must allege that "(1) that the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).  In the Second Amended Complaint, Holtec alleges that the equipment malfunctioned from the date of installation, that it was used as intended, and that no other apparent reasons were the cause for malfunction.  Accordingly, the Complaint states a plausible claim for breach of the implied warranty of merchantability and AMI's Motion to Dismiss the breach of implied warranty claim is denied.

18

### F. Negligence and Professional Negligence

AMI seeks dismissal of Holtec's claims against it for negligence and professional negligence as barred by the gist of the action and economic loss doctrines, and as otherwise defectively pleaded. ECF No. 104 at 14-18. AMI also contends that each of these claims is barred by the applicable statute of limitations. This Court has held that Holtec cannot maintain its negligence/professional negligence claims against AMI's individual employees because all such claims are barred by the gist of the action and economic loss doctrines. ECF No. 148. This ruling is equally applicable to Holtec's negligence claims against AMI.

The economic loss doctrine bars negligence claims whether or not a contract exists between the parties if the only harm suffered is the failure of a product to function properly or lost profits resulting from that failure. See, Slippery Rock Area Sch. District v. Tremco, Inc., No. 15-1020, 2016 WL 3198122, at *13 (June 9, 2016) (citing Bilt-Rite Contractors v. The Architectural Studio, 866 A.2d 270 (Pa. 2005) and 2-J Corp. v. Tice, 126 F.3d 539, 542-43 (3d Cir. 1997)). "[Q]uintessential economic loss" occurs "[w]hen a product purchased by a commercial entity failed to perform, [and] that entity's business [is] disrupted, resulting in loss of customers, sales, and profits. The economic loss doctrine preclude[s] recovery in tort from the product's manufacturer for these purely economic damages." Id. In such cases, the plaintiff is appropriately limited to breach of warranty "through which a contracting party can seek to recoup the benefit of its bargain." Id. (internal citations omitted).

Holtec raises a narrow exception set forth in Bilt-Rite to avoid dismissal of its claims for professional negligence. ECF No. 150. In Bilt-Rite, the Pennsylvania Supreme Court held that a plaintiff may sue an entity for negligent misrepresentation and recover solely economic damages "if that entity is in the *business of providing information.*" Slippery Rock, 2016 WL 319822, at

*14 (italics in original) (quoting in part, <u>Bilt-Rite</u>, 866 A.2d at 287). This exception does not apply, however, when the defendant, as alleged in the complaint, "is not in the business of supplying information," but markets and manufactures products. <u>Id.</u> at *15.

Based on the allegations in the Second Amended Complaint, Holtec seeks to recover the loss of its bargain for equipment that failed to function and for business losses incurred as a result of production delays. Any information allegedly supplied by AMI was ancillary to the sale and service of its products, and thus the <u>Bilt-Rite</u> exception does not apply. Accordingly, the economic loss doctrine bars Holtec's negligence claims and the Motion to Dismiss Count IV of the Second Amended Complaint will be granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendant ARC Machines, Inc.'s Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is properly granted as to Holtec's negligence claims only and is otherwise denied. An appropriate Order follows.

## ORDER

AND NOW, this 5th day of October 2020, upon consideration of Defendant ARC Machines, Inc.'s Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 102, and the briefs filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the motion is granted in part and denied in part as follows:

(1) AMI's Motion for Summary Judgment on the grounds of estoppel is denied;

(2) AMI's Motion to Dismiss Holtec's direct and third-party beneficiary claims for breach of contract, breach of warranty; unjust enrichment and promissory estoppel is denied;

(3)  AMI's Motion to Dismiss Holtec's negligence claims is granted.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of

Appellate Procedure, if Plaintiffs wish to appeal from this Order, Plaintiffs must do so within

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk

of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.


BY THE COURT:


*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc:     All counsel of record via CM/ECF